UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **W D & R P BILGOR IRREVOCABLE TRUST DATED 11/21/99, by its Trustee, LESLI BILGOR,** *et al.*,<br><br>     **Plaintiffs,**<br><br>     v.<br><br>**TRANSAMERICA LIFE INSURANCE COMPANY,** *et al.*,<br><br>     **Defendants.** | **Case No. 23–cv–21181–ESK–EAP**<br><br><br>**OPINION** |

**KIEL, U.S.D.J.**

This matter involves a life insurance policy that defendant Transamerica Life Insurance Company (Transamerica) issued to plaintiff W D & R P Bilgor Irrevocable Trust (Trust).[1]  On behalf of the Trust, which was co-established by plaintiff William Bilgor, defendant Raymond James Insurance Group, Inc. (Raymond James) was allegedly responsible for covering the policy's unpaid

---

[1] Although the Trust is pleaded as having been dated November 21, 1999, the record indicates that the Trust was established on November 12, 1999.  (*See* ECF No. 41–3 (Dismissal Mot. Ex. 1.)  Transamerica's correspondences with the Trust also indicate that November 12, 1999 is the correct date. (*See, e.g.*, ECF No. 41–7 (Dismissal Mot. Ex. 5); ECF No. 41–10 (Dismissal Mot. Ex. 8); ECF No. 41–11 (Dismissal Mot. Ex. 9).)  Furthermore, it is unclear whether Lesli Bilgor is named as an individual plaintiff or merely referenced within the title of the Trust.  Lesli submitted a declaration identifying herself as "a [p]laintiff in [this] matter, and the [t]rustee of the [Trust]."  (ECF No. 46–1 (Lesli Dec.) ¶ 1.)  But the amended complaint does not identify Lesli as a plaintiff.  (*See, e.g.*, ECF No. 38 (Am. Compl.) ¶ 10 ("Under the terms of the [p]olicy, a monthly amount was to be paid to *Defendant* Transamerica … with a … minimum benefit paid, in equal shares, to Lesli Bilgor and Jayne Morris, the children of *Plaintiff* William." (emphasis added)).)

premiums.    After payments lapsed, and Transamerica terminated the policy and denied the request to reinstate it, plaintiffs brought breach of contract, breach of fiduciary duties, New Jersey Consumer Fraud Act (CFA), declaratory relief, and unjust enrichment claims against defendants.    Because the claims against Transamerica lack facial plausibility, and all claims against Raymond James are subject to binding arbitration, I find that dismissal is warranted.

## I.   PROCEDURAL HISTORY

Plaintiffs commenced this action in the Superior Court of New Jersey on September 11, 2023.    (ECF No. 1 ¶ 1.)    Transamerica, with the consent of Raymond James, timely removed this action on October 16, 2023 based on diversity jurisdiction.    (*Id.* ¶¶ 4, 31.)    On November 6, 2023, Transamerica requested leave to file a motion to dismiss the complaint (ECF No. 8) and Raymond James requested leave to file a motion to compel arbitration (ECF No. 9).    In response, Judge Robert Kirsch held pre-motion conferences on November 21, 2023, December 5, 2023, and December 19, 2023.    (ECF Nos. 11, 13, 15.)    While Transamerica withdrew its request, Judge Kirsch granted Raymond James leave to file its motion to compel arbitration.    (ECF No. 18.) Pending resolution of Raymond James' anticipated motion, Judge Kirsch stayed defendants' time to respond to the complaint.    (*Id.*)

On March 22, 2024, Raymond James filed its initial motion to compel arbitration.    (ECF No. 17.)    This action was reassigned to me on March 28, 2024.    (ECF No. 18).    Pursuant to the discussion at the December 30, 2024 hearing, I administratively terminated Raymond James' initial motion to compel arbitration.    (ECF Nos. 28–30.)    On February 24, 2025, plaintiffs filed an amended complaint, asserting claims for: (1) breach of contract; (2) breach of fiduciary duty; (3) violations of the CFA; (4) declaratory relief; and (5) unjust enrichment.    (ECF No. 38 (Am. Compl.).)    On June 9, 2025, Transamerica filed a motion to dismiss (Motion to Dismiss) (ECF No. 45 (Dismissal Mot. Mov.

Br.)), and Raymond James filed a motion to compel arbitration (Motion to Compel Arbitration) (ECF No. 48).  Plaintiffs opposed the Motion to Dismiss (ECF No. 46 (Dismissal Mot. Opp'n Br.)) and the Motion to Compel Arbitration (ECF No. 49 (Arbitration Mot. Opp'n Br.)).  Defendants filed reply briefs in further support of the Motion to Dismiss (ECF No. 47 (Dismissal Mot. Reply Br.)) and Motion to Compel Arbitration (ECF No. 50 (Arbitration Mot. Reply Br.)).

## II.  FACTUAL BACKGROUND[2]

In November 1999, William and his wife established the Trust, naming their daughter Lesli as trustee.  (Am. Compl. ¶ 7; Dismissal Mot. Ex. 1 pp. 2–5.)  One month later, the Trust purchased a life insurance policy covering William and his wife.  (Am. Compl. ¶ 8; ECF No. 41–4 (Dismissal Mot. Ex. 2) p. 4.)  The policy was issued by Transamerica and sold to the Trust by Raymond James.  (Am. Compl. ¶¶ 8, 9.)

As the owner of the policy, the Trust was to pay an annual premium of $8,117.  (Dismissal Mot. Ex. 2 pp. 13, 61, 62, 63.)  If the premium was not paid through Transamerica's deduction, plaintiffs had an arrangement with Raymond James to pay the premium.  (Am. Compl. ¶¶ 11, 13, 17.)

---

[2] I accept the factual allegations in the amended complaint as true and draw all inferences in favor of plaintiffs.  *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).  I consider any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).  While plaintiffs argue that the policy documents, reports, and correspondences Transamerica submitted as exhibits in support of the Motion to Dismiss are not "undisputedly authentic" and do not form the basis of their claims (Dismissal Mot. Opp'n Br. pp. 3–6), I find otherwise. These exhibits, which plaintiffs were notified of before Transamerica's counsel submitted them with the Motion to Dismiss under penalty of perjury, are "integral to [and] explicitly relied upon in the complaint" and are directly related to plaintiffs' claims that Transamerica violated the terms of the policy.  *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

According to the policy, if Transamerica stopped receiving premium payments "after the required premium period … coverage [would] continue until the net cash value [was] insufficient to pay the monthly deduction due." (ECF No. 41–4 (Dismissal Mot. Ex. 2) p. 13.)   Transamerica would then send the owner of the policy notice that the policy entered the grace period, by the end of which payment [was] due to avoid termination.   (*Id.* p. 14.)   "Grace period" is defined by the policy as "a period of 60 days beginning on (a) a certificate anniversary on which the cumulative [r]equired [p]remium [p]er [y]ear for the certificate in [c]ertificate [y]ears 1–5 has not been paid … or, (b) a monthly certificate date when the accumulation value minus any existing loan is less than the monthly deduction due."   (*Id.*)   If certain conditions are met, policies with a no lapse guarantee "will not enter its [g]race [p]eriod even if the policy's accumulation value is insufficient to cover the monthly deduction and other policy charges and/or fees."   (ECF No. 41–6 (Dismissal Mot. Ex. 4) p. 11.) If the policy lapses but "evidence on insurability is satisfactory," Transamerica reserves the right to reinstate the policy upon request.   (Dismissal Mot. Ex. 2 p. 15.)

The policy's premium payments eventually ceased, but plaintiffs allege they were unaware of this.   (Am. Compl. ¶¶ 15, 19.) [3]   In support of the Motion to Dismiss, Transamerica submits correspondences that show that from December 2019 onwards, Transamerica repeatedly sent the Trust notices concerning premium obligations, policy values, and alleged deficiencies. (Dismissal Mot. Ex. 4.)   On January 15, 2020, Transamerica sent the Trust a

---

[3] According to the amended complaint "[m]onthly payments continued to be paid on the [p]olicy … through late 2020–early 2021." (Am. Compl. ¶ 15.)   But Transamerica asserts that the last premium payment it received was in December 2009.   (Dismissal Mot. Mov. Br. p. 14; ECF No. 41–5.)   At this stage, it is irrelevant when premium payments ceased.

letter, advising it that the policy's no lapse guarantee was not in effect. (Dismissal Mot. Ex. 5 p.11.) Transamerica re-sent this letter to the Trust on January 13, 2021 (ECF No. 41–8 (Dismissal Mot. Ex. 6)) and January 14, 2022 (ECF No. 41–9 (Dismissal Mot. Ex. 7). Pursuant to the terms of the policy, Transamerica notified the Trust on April 29, 2022 that the policy "entered its grace period and is in danger of lapsing." (Dismissal Mot. Ex. 2 p.14; Dismissal Mot. Ex. 8.) "[T]o maintain the no-lapse death benefit guarantee," Transamerica directed the Trust to submit payment of $87,495 by June 28, 2022. (Dismissal Mot. Ex. 8.) Since no payment was received by that date, the policy was terminated. (Dismissal Mot. Ex. 9; Am. Compl. ¶ 18.) Through correspondences dated March 14, 2023 and April 17, 2023, Transamerica denied plaintiffs' request to have the policy reinstated. (ECF No. 41–12; ECF No. 41–13; Am. Compl. ¶ 20.)

### III. MOTION TO DISMISS

#### A.    <u>Legal Standard</u>

When considering a motion to dismiss under Federal Rule of Civil Procedure (Rule) 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the non-moving party. A motion to dismiss may be granted only if the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Although Rule 8 does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the sufficiency of a complaint, a court must take three steps. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). "First, it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim. *Id.*

(alterations in original) (quoting *Iqbal*, 556 U.S. at 675).   "Second, it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'"   *Id.* (quoting *Iqbal*, 556 U.S. at 679.) Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."   *Id.* (alterations in original) (quoting *Iqbal*, 556 U.S. at 679).   "[A] complaint's allegations of historical fact continue to enjoy a highly favorable standard of review at the motion-to-dismiss stage of proceedings." *Id.* at 790.

### B.    Discussion

#### 1.    Standing

As a threshold issue, William lacks standing to assert claims arising from the policy.   (*See* Dismissal Mot. Mov. Br. pp. 20, 21.)   The policy is a contract between Transamerica and the Trust.   (Am. Compl. ¶ 11; Dismissal Mot. Ex. 2 p. 4).   The Trust—not William—is the owner of the policy.   (Am. Compl. ¶ 11). And only parties to a contract or intended beneficiaries may sue to enforce it. *See N.J.S.A.* 2A:15-2.

Plaintiffs argue that because William funded the policy, he is an intended beneficiary of the contractual arrangement and, thus, has standing. (Dismissal Mot. Opp'n Br. pp. 7, 8.)   But, as Transamerica argues, William and his wife established the Trust to divest themselves of ownership interests in the policy.   (Dismissal Mot. Reply Br. p. 2.)   Plaintiffs cite to no authority, and I am unaware of any, wherein a party that has intentionally relinquished contractual rights, can later assert them individually.   *See Broadway Maint. Corp. v. Rutgers, State Univ.*, 447 A.2d 906, 909 (N.J. 1982) (noting that "[t]he contractual intent to recognize a right to performance in the third person is the key" and "[i]f that intent does not exist, then the third person is only an incidental beneficiary, having no contractual standing").   N.J.S.A. 2A:15-2

6

only applies when the contract was made "for the benefit" of the third party. Here, the policy designates the Trust as both owner and beneficiary. The amended complaint contains no factual allegations showing that Transamerica and the Trust intended to confer enforceable rights on William individually. Thus, I find that William cannot seek relief for any violations of the policy.

### 2.   Facial Plausibility

Regardless of whether William has contractual standing to the policy, all claims against Transamerica hinge on the assertion that Transamerica improperly lapsed the policy and wrongfully denied reinstatement. (Dismissal Mot. Mov. Br. pp. 21, 22.) But plaintiffs' allegations are conclusory and contradicted by documents integral to the claims.

### a.  Breach of Contract

An express breach of contract claim requires that the parties entered into a contract containing certain terms, the plaintiff performed as required while the defendant did not, and the defendant's breach caused a loss for the plaintiff. *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021). Meanwhile, to assert a breach of the implied covenant of good faith and fair dealing, a plaintiff must allege that: "(1) the defendant act[ed] in bad faith or with a malicious motive, (2) to deny the plaintiff some benefit of the bargain originally intended by the parties, even if that benefit was not an express provision of the contract." *Veyhl v. State Farm Fire & Cas. Co.*, 21–10112, 2021 WL 6062304, at *2 (D.N.J. Dec. 22, 2021) (alteration in original) (quoting *Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F.Supp.3d 449, 463 (D.N.J. 2020)).

Plaintiffs allege that Transamerica's decision to terminate and not reinstate the policy was improper. But these allegations are devoid of any detail necessary to conclude that Transamerica breached its contract and

covenant of good faith and fair dealing with plaintiffs.[4]    While plaintiffs claim that they did not receive proper notice that the policy was at risk of being terminated for failure to pay the premium (Am. Compl. ¶¶19, 20), the record demonstrates otherwise (Dismissal Mot. Exs. 4–9).    Pursuant to the policy (Dismissal Mot. Ex. 2 pp.13, 14), Transamerica sent multiple notices to the Trust, including annual statements, premium reminders, and a "Grace Period Final Notice" advising that the policy had entered its grace period and specifying the payments required to maintain coverage (Dismissal Mot. Exs. 4–9).    Plaintiffs take issue with these notices not having been forwarded to Raymond James.    (Am. Compl. ¶19.)    But beyond a conclusory allegation that Transamerica was "contractually bound" to do so, plaintiffs fail to sufficiently plead the nature of Transamerica and Raymond James' alleged contract.    (*See id.*)    Similarly, while plaintiffs disagree with Transamerica's decision not to reinstate the policy, plaintiffs fail to plead how or why Transamerica should have reinstated the policy.    *See Marshall v. Verde Energy USA, Inc.*, No. 18–01344, 2019 WL 1254562 at *3 (D.N.J. Mar. 19, 2019) ("When a party has the right to exercise discretion under a contract, the discretion must not be used for an improper motive, or 'arbitrarily, unreasonably, or capriciously.'" (quoting *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1128 (N.J. 2001))).

Plaintiffs' reliance on an "anti-lapse" or "no-lapse" provision does not render the policy termination a breach.    The policy contains express conditions and automatic termination triggers.    (*See* Dismissal Mot. Ex. 2.)    Plaintiffs do not dispute that the policy's premium payments were not made and do not allege that Transamerica acted in bad faith.    *See Marshall*, 2019 WL 1254562, at *5 ("[A] plaintiff cannot satisfy the 'improper motive' element of a claim for

---

[4] Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is raised within plaintiff's breach of contract claim.    (Am. Compl. ¶23.)

breach of the covenant of good faith and fair dealing by alleging, without more, that the defendant's discretionary decisions benefitted the defendant and disadvantaged the plaintiff."). Absent such allegations, I am unable to draw a reasonable inference that Transamerica breached its contract or that Transamerica had a "'bad motive' in exercising their discretionary … authority." *Slack v. Suburban Propane Partners, L.P.*, No. 10–02548, 2010 WL 3810870, at \*7 (D.N.J. Sept. 21, 2010) (quoting *Ashcroft*, 556 U.S. at 663).

### b. **Breach of Fiduciary Duties**

"[T]o state a claim for breach of fiduciary duty, a plaintiff must allege: (1) the existence of a fiduciary relationship, (2) a breach of the duty imposed by that relationship, and (3) harm to the plaintiff." *Canon Fin. Servs., Inc. v. Bray*, No. 14–3829, 2015 WL 851816, at \*4 (D.N.J. Feb. 26, 2015). Plaintiffs do not allege how they were in a fiduciary relationship with Transamerica. *See Brown v. Sysco Food Servs. of Metro New York LLC*, No. 14–00474, 2014 WL 2566145, at \*3 (D.N.J. June 6, 2014) (dismissing the breach of fiduciary duty claims because the complaint lacked facts from which it could be inferred that the defendant was the plaintiff's fiduciary). Yet, assuming the policy established Transamerica as a fiduciary to plaintiffs, this claim fails for failure to assert a breach of the relationship.

Plaintiffs assert that the amended complaint pleads several breaches of Transamerica's fiduciary duty, including failure to notify of missed payments, failure to forward notices to Raymond James, and improperly terminating and refusing to reinstate the policy. (Dismissal Mot. Opp'n Br. p.11.) But, as already discussed, plaintiffs' arguments are undermined by the amended complaint and documents integral to the amended complaint, which

9

undisputedly show that Transamerica acted pursuant to the terms of the policy. (*See* Dismissal Mot. Exs. 4–9.)

### c. **CFA Violations**

"To state a CFA claim, a plaintiff must allege '(1) unlawful conduct; (2) ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss.'" *Marshall*, 2019 WL 1254562 at *3 (D.N.J. Mar. 19, 2019) (quoting *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 929 A.2d 1076, 1086 (N.J. 2007)). Unlawful conduct is defined as "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission." N.J.S.A. 56:8-2. In other words, "to state a valid CFA claim, a plaintiff must allege 'substantial aggravating circumstances,' and demonstrate that the defendant's conduct 'stand[s] outside the norm of reasonable business practice in that it will victimize the average consumer.'" *Urbino v. Ambit Energy Holdings, LLC*, No. 14–05184, 2015 WL 4510201, at *3 (D.N.J. July 24, 2015) (alterations in original) (first quoting *Suber v. Chrysler Corp.*, 104 F.3d 578, 587 (3d Cir.1997)) (second quoting *Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 655 A.2d 417, 430 (N.J. 1995)).

Typically, "[w]hether a business practice is unfair is a question for the jury." *Id.* But, when a CFA "claim is founded on written statements, … the court must make a legal decision whether the practice is unlawful in light of the writings." *Id.* Thus, absent a substantial aggravating circumstance, courts will dismiss a CFA claim "based on a valid, written contract" if "the conduct alleged is 'expressly authorized' by the terms of that contract." *Marshall v. Verde Energy USA, Inc.*, No. 18–01344, 2019 WL 1254562 at *3 (D.N.J. Mar. 19, 2019) (quoting *Urbino*, 2015 WL 4510201, at *3).

Here, plaintiffs allege that Transamerica violated the CFA by falsely representing to plaintiffs to purchase a policy that would not be cancelled so long as sufficient funds were available.  (Am. Compl. ¶¶ 30–33.)  Given that the policy expressly permitted termination for failure to pay premiums and having an insufficient cash value, and plaintiffs do not expressly allege any aggravating circumstances, the CFA claim must be dismissed.  *See Hassler v. Sovereign Bank*, 374 F. App'x 341, 344 (3d Cir. 2010).

### d.  Unjust Enrichment

To state a claim for unjust enrichment "a plaintiff must show both that [the] defendant received a benefit and that retention of that benefit without payment would be unjust."  *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994).  Unjust enrichment is a quasi-contract theory of recovery, so when there is an express contract, there is no basis for imposing such relief.  *See Garcia v. Prudential Life Ins. Co. of Am.*, 08–5756, 2009 WL 5206016, at *13 (D.N.J. Dec. 29, 2009); *Hillsborough Rare Coins, LLC v. ADT LLC*, No. 16–00916, 2017 WL 1731695, at *6 (D.N.J. May 2, 2017).  While "[t]he Third Circuit allows for pleading in the alternative when a plaintiff brings claims for both breach of contract and unjust enrichment," this is permitted "so long as 'the validity of the contract itself is actually disputed, making unjust enrichment a potentially available remedy.'"  *JJD Elec., LLC v. SunPower Corp., Sys.*, 738 F. Supp. 3d 569, 583 (D.N.J. 2024) (quoting *Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 170 n.8 (3d Cir. 2014)).  Since plaintiffs' unjust enrichment claim is based on the same conduct as their breach of contract claim, but plaintiffs do not assert that the policy was invalid, I find that the unjust enrichment claim fails.

### e.  Declaratory Relief

Plaintiffs plead a separate count for declaratory relief.  (Am. Compl. ¶¶ 45–49.)  Considering "courts in this circuit routinely dismiss stand-alone

11

counts for declaratory and injunctive relief, since such claims are requests for remedies, and not independent causes of action," I will do the same.   *ASAH v. N.J. Dep't of Educ.*, No. 16–3935, 2017 WL 2829648, at * 12 (D.N.J. June 20, 2017).

### IV. MOTION TO COMPEL ARBITRATION

#### A.   <u>Legal Standard</u>

The Federal Arbitration Act (FAA) "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes."   *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009).   "Congress designed the FAA to overrule the judiciary's longstanding reluctance to enforce agreements to arbitrate … and in the FAA expressed a strong federal policy in favor of resolving disputes through arbitration."   *Id.*   But "[t]he strong federal policy favoring arbitration … does not lead automatically to the submission of a dispute to arbitration upon the demand of a party to the dispute."   *Id.* at 523.

"Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement."   *Id.*   "To determine whether the parties have agreed to arbitrate … 'ordinary state-law principles that govern the formation of contracts' apply."   *Id.* (*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).   "[W]hether certain claims fall within the ambit of an arbitration clause" depends "on the 'factual allegations in the complaint rather than the legal causes of action asserted.'"   *Jayasundera v. Macy's Logistics & Operations, Dep't of Hum. Res.*, No. 14–7455, 2015 WL 4623508, at *2 (D.N.J. Aug. 3, 2015) (quoting *Mutual Ben. Life Ins. Co. v. Zimmerman,* 783 F.Supp. 853, 869 (D.N.J.1992)).   Where arbitrability is apparent from the complaint, courts apply the Rule 12(b)(6) standard to decide a motion to compel arbitration.   *Guidotti v. Legal Helpers Debt Resol., L.L.C.*,

716 F.3d 764, 773–74 (3d Cir. 2013).    But when the complaint lacks the clarity "to establish on its face that the parties agreed to arbitrate, or the opposing party has come forth with reliable evidence that is more than a 'naked assertion … that it did not intend to be bound' by the arbitration agreement," courts apply the Rule 56 summary judgment standard.    *Id.* at 774.

"Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"    *Taylor v. CDS Advantage Sols.*, No. 20–02803, 2024 WL 1048124, at *4 (D.N.J. Mar. 9, 2024) (quoting Fed. R. Civ. P. 56(a)).    "A factual dispute is genuine only if there is 'a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party,' and it is material only if it has the ability to 'affect the outcome of the suit under governing law.'"    *Id.* (quoting *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006)).    "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"    *Id.* (quoting *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004)).    "Summary judgment may not be granted … if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed."    *Id.* (alteration in original) (quoting *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3rd Cir. 1991)).

### B.    Discussion

Beyond alleging that "Raymond James' failure to ensure that payments from the other accounts held by … William … and/or [his wife] were tendered as premiums to … Transamerica under the anti-lapse provision of the policy, constituted an express breach of contract," the amended complaint makes no other reference to such a contract.    (Am. Compl. ¶ 35.)    The contract is not attached to the amended complaint and no reference to an arbitration provision

13

is made therein.  Instead, the documents governing plaintiffs' relationship with Raymond James were submitted into the record for the first time in support of the Motion to Compel Arbitration.  *See Carroll v. Hyundai Motor Am. (Corp.)*, No. 23–01164, 2024 WL 776544, at *3 (D.N.J. Feb. 26, 2024) (noting that because "the question of arbitrability cannot be resolved without considering … evidence extraneous to the pleadings … it would be inappropriate to apply the Rule 12(b)(6) [standard] in deciding th[e] motion").  These documents include plaintiffs and Raymond James' original client agreement (ECF No. 42–2 pp.8, 9 (Arbitration Mot. Ex. 2)), and plaintiffs' 2020 client profile, which includes a revised client agreement (ECF No. 42–2 pp.11–80 (Arbitration Mot. Ex. 3); ECF No. 82–87 (Arbitration Mot. Ex. 4)).

The original client agreement includes an arbitration provision, binding plaintiffs and Raymond James to settle any future or present disputes that remain unsettled after mediation "by arbitration conducted before the New York Stock Exchange, Inc. [(NYSE)], the National Association of Securities Dealers, Inc. [(NASD)], or the American Stock Exchange, Inc. (ASE) or other self-regulatory organizations … subject to the jurisdiction of the Securities and Exchange Commission ([SEC])." (Arbitration Mot. Ex. 2 p.9.)  This arbitration provision was updated in the revised client agreement and states that "[a]ny dispute or controversy, either arising in the future or in existence now … will be resolved by arbitration conducted before FINRA."  (Arbitration Mot. Ex. 3 p.26.)  The table of contents of the 2020 client profile advises plaintiffs to carefully review the revised client agreement as it "contains a pre-dispute arbitration clause on page 14 under the title 'Arbitration Disclosures.'" (*Id.* p.13.)  The 2020 client profile's signature page includes the same notice. (*Id.* p.87.)

Plaintiffs do not dispute that the original and revised client agreements include arbitration provisions within which this dispute falls.  (*See generally*

14

Arbitration Mot. Opp'n Br.; Arbitration Mot. Reply Br. p. 8.) [5]   Yet to overcome their burden of presenting more than "a naked assertion" that they did not intend to be bound to arbitration, *see Young v. Experian Info. Sols., Inc.,* 119 F.4th 314, 319–20 (3d Cir. 2024), plaintiffs argue that there is no evidence of their knowing and voluntary waiver of their constitutional right to judicial determination (Arbitration Mot. Opp'n Br. pp. 4–12).   Despite William and Leslie asserting that they have no recollection of agreeing to be bound to arbitration, they do not challenge the validity of the client agreements nor their signatures.   (*Id.*; Lesli Dec.; ECF No. 46–2; Arbitration Mot. Reply Br. p. 11.) Instead, plaintiffs note that because the revised client agreement incorrectly states that page 14 contains the arbitration provision, Raymond James cannot argue that the arbitration provision was easy to locate or accessible.   (*Id.* pp. 4–7.) [6]

---

[5] The initial and revised client agreements include Florida choice of law provisions. (Arbitration Mot. Ex. 2 p. 9; Arbitration Mot. Ex. 3 p. 22.) Yet, in evaluating whether the arbitration provisions are enforceable, plaintiffs argue that because the parties lack a substantial relationship with Florida, New Jersey law applies. (Arbitration Mot. Opp'n Br. pp. 1–4.)   This argument is belied by the fact that plaintiffs concede that Raymond James is headquartered in Florida. (*Id.* p. 2; Arbitration Mot. Reply Br. pp. 5–7.)   While I find that Florida law controls, both Florida and New Jersey law require that there be a meeting of the minds to have an enforceable contract.   *Collins On behalf of herself v. Mary Kay, Inc.*, 874 F.3d 176, 183-84 (3d Cir. 2017); *Rodero v. Signal Fin. Co. LLC*, 365 F. Supp. 3d 1263, 1265 (S.D. Fla. 2018); *Taylor*, 2024 WL 1048124, at *3.

[6] In support of the initial motion to compel arbitration, Raymond James submitted a supplemental declaration to explain that the page discrepancy was due to pagination differences between document versions.   (Arbitration Mot. Reply Br. p. 8 n. 2; ECF No. 26 (Basye May 2024 Decl.) ¶¶ 6–12.)   The version of the 2020 client profile William signed correctly identified the page containing the arbitration provision. (Basye May 2024 Decl. ¶ 10.)   But the version William was mailed thereafter contained a pagination issue.   (*Id.* ¶¶ 11, 12.)   The language of the two versions are identical.   (*Id.*)   Plaintiffs do not address this supplemental declaration in their opposition to the Motion to Compel Arbitration.   (*See* Arbitration Mot. Reply Br. p. 8 n. 2.)

"The size of the print and the location of the arbitration provision in a contract has great relevance to any determination to compel arbitration, particularly when … the provision in contained in a contract of adhesion." *Rockel v. Cherry Hill Dodge*, 847 A.2d 621, 627 (N.J. Super. Ct. App. Div. 2004); *see also Valiente v. StockX, Inc.*, 645 F. Supp. 3d 1331, 1338 (S.D. Fla. 2022) (noting that when assessing whether an arbitration provision is unconscionable, the Supreme Court of Florida checks whether important terms were hidden in a maze of fine print).   In signing the revised client agreement, plaintiffs acknowledged that they read and understood the full agreement. (Arbitration Mot. Reply Br. p. 10.)   "[I]t is well settled that signing a contract creates a 'conclusive presumption that the signer read, understood, and assented to its terms.'"   *Raiczyk v. Ocean Cnty. Veterinary Hosp.,* 377 F.3d 266, 270 (3d Cir. 2004) (quoting *Fleming Cos. Inc. v. Thriftway Medford Lakes, Inc.,* 913 F.Supp. 837, 842–43 (D.N.J.1995)); *Valiente*, 645 F. Supp. 3d at 1338 ("That [p]laintiff may not have actually read the [t]erms before affirmatively assenting to them is not dispositive.").   While plaintiffs were advised that the arbitration provision was on an incorrect page, the arbitration provision appears in bold letters on a page dedicated exclusively to the provision.  (Arbitration Mot. Reply Br. p. 4; Arbitration Mot. Ex. 3 p. 26.)   The arbitration provision is not hidden or buried within the revised client agreement, such that it is "difficult to locate and, once found, onerous to read in light of the small size of the print." *Rockel*, 847 A.2d at 627.

To the extent plaintiffs argue that an ambiguity exists as to the proper forum for arbitration (Arbitration Mot. Opp'n Br. pp. 7–11), I find otherwise. The revised client agreement directs arbitration to be conducted before FINRA. (Arbitration Mot. Ex. 3 p. 26.)   Since FINRA did not exist at the time the initial client agreement was entered into, the initial client agreement's arbitration provision directs arbitration to be conducted before the NYSE, NASD, or ASE.

(Arbitration Mot. Ex. 2 p. 9.)   Plaintiffs assert that this discrepancy precludes enforcement of the arbitration provisions.   (Arbitration Mot. Opp'n Br. pp. 7–11.)   But not only is FINRA the NASD's legal successor, FINRA is included within the initial client agreement's catchall language that arbitration may be conducted before "any other self-regulatory organizations … subject to the jurisdiction of the SEC."   *See Gaffney v. Levine*, No. A–3464–18T2, 2020 WL 468005, at *4 (N.J. Super. Ct. App. Div. Jan. 29, 2020) (holding that "because FINRA is the successor entity to NASD, courts have consistently compelled arbitration before FINRA, where, as here, the arbitration agreement specified that arbitration will occur under the rules of NASD"); *but see Kleine v. Emeritus at Emerson*, 139 A.3d 148, 152 (N.J. Super. Ct. App. Div. 2016) (declining to compel arbitration "because the arbitration process contemplated by the clause in question was not available when the parties executed their contract").

Accordingly, there is no genuine issue of material fact as to whether a valid arbitration agreement exists.   Although plaintiffs do not recall assenting to the arbitration provisions in the initial and revised client agreements, the record indicates otherwise.   Plaintiffs' claims against Raymond James shall proceed in arbitration.[7]

---

[7] Plaintiffs take issue with the arbitration provisions allowing a party to seek *de novo* review of an arbitrators' decision. (Arbitration Mot. Opp'n Br. p. 11.)   As Raymond James' notes, this issue is not relevant to the Motion to Compel Arbitration. (Arbitration Mot. Reply Br. p. 15.)

## V.  CONCLUSION

For the reasons stated above, the Motion to Dismiss and Motion to Compel Arbitration are **GRANTED**.


    */s/ Edward S. Kiel*

**EDWARD S. KIEL**
**UNITED STATES DISTRICT JUDGE**

Dated: April 29, 2026